UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOHN D. REVY,

Plaintiff,

v.

AT&T SERVICES INC.

Defendant.

Case No. 25-cv-05744

**Oral Argument Requested**

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY ALL PROCEEDINGS

# TABLE OF CONTENTS

**Page**


I. AT&T OFFERED, AND REVY ACCEPTED, AN AGREEMENT TO MUTUALLY ARBITRATE CLAIMS ..... 1

II. THIS COURT SHOULD COMPEL REVY'S CLAIMS TO ARBITRATION AND STAY ALL PROCEEDINGS ..... 3

  I. AT&T's Evidence Demonstrates the Existence of a Valid and Enforceable Agreement to Arbitrate ..... 5

    1. AT&T Offered, and Revy Received, the MAA via Email ..... 6

    2. Revy Accepted that Agreement by Failing to Opt Out ..... 8

    3. A Mutual Promise to Arbitrate is Adequate Consideration ..... 9

III. REVY'S CLAIMS ARE WITHIN THE SCOPE OF THE AGREEMENT ..... 10

IV. THIS COURT SHOULD STAY THIS ACTION PENDING ARBITRATION ..... 11

V. CONCLUSION ..... 11

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*AT&T Mobility Servs. LLC v. Inzerillo*,
No. 4:17-cv-00841-HFS, 2018 U.S. Dist. LEXIS 231537 (W.D. Mo. Jan. 31, 2018) ....4

*AT&T Mobility Servs., LLC v. Payne*,
No. 3:17-cv-0649-CRS, 2018 WL 935441 (W.D. Ky. Feb. 16, 2018) ....4

*Bensadoun v. Jobe-Riat*,
316 F.3d 171 (2d Cir. 2003) ....5

*Beth Israel Med. Ctr. V. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
448 F.3d 573 (2d Cir. 2006) ....8

*Bolden v. AT&T Servs., Inc.*,
350 F. Supp. 3d 1029 (D. Kan. 2018) ....4

*Brown v. St. Paul Travelers Cos.*,
331 F. App'x 68 (2d Cir. 2009) ....8

*Casias v. AT&T Servs., Inc.*,
No. 1:23-cv-05944-JPB-RDC, 2024 U.S. Dist. LEXIS 101709 (N.D. Ga. June 7, 2024), *report and recommendation adopted*, 2024 U.S. Dist. LEXIS 252607 (N.D. Ga. June 24, 2024) ....4

*Chen-Oster v. Goldman, Sachs & Co.*,
449 F. Supp. 3d 216 (S.D.N.Y. 2020), *objections overruled*, No. 10 Civ. 6950 (AT), 2021 WL 4199912 (S.D.N.Y. Sep. 15, 2021) ....11

*Chung v. Royal Care, Inc.*,
No. 23-CV-07962 (OEM) (LKE), 2025 WL 1029432 (E.D.N.Y. Jan. 8, 2025), *report and recommendation adopted*, 2025 WL 809900 (E.D.N.Y. Mar. 14, 2025) .... *passim*

*CIT Bank N.A. v. Schiffman*,
36 N.Y.3d 550 (N.Y. 2021) ....6

*Clearfield v. HCL Am. Inc.*,
No. 17-CV-1933 (JMF), 2017 WL 2600116 (S.D.N.Y. June 14, 2017) ....9

*Concilla v. May*,
214 A.D.2d 848 (N.Y. App. Div. 1995) ....6

*Cornoyer v. AT&T Mobility Servs., LLC*,
No. 15-0474 JB/WPL, 2016 U.S. Dist. LEXIS 140109 (D.N.M. Oct. 5, 2016) ....4

*Couch v. AT&T Servs., Inc.*,
No. 13-cv-2004 (DRH)(GRB), 2014 WL 7424093 (E.D.N.Y. Dec. 31, 2014)............... *passim*

*Danielski v. AT&T*,
Cause No. D-1-GN- 14-000718 (Tex. Dist.–Travis Cnty. May 28, 2014)...............................5

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)..........................................................................................................4

*Fletcher v. Kidder, Peabody & Co.*,
81 N.Y.2d 623 (1993), *cert. denied*, 510 U.S. 993 (1993) ......................................................11

*Frazier v. Morgan Stanley*,
No. 16 Civ. 804 (RJS), 2018 WL 11585450 (S.D.N.Y. Nov. 29, 2018) ..................................7

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991)..........................................................................................................11

*Guyden v. Aetna Inc.*,
544 F.3d 376 (2d Cir. 2008)...............................................................................................10

*Krafczek v. Cablevision Sys. Corp.*,
No. 17-cv-2915 (JMA)(SIL), 2018 WL 8918077 (E.D.N.Y. Apr. 25, 2018)...........................4

*Manigault v. Macys E., LLC*,
318 F. App'x 6 (2d Cir. 2009) ...................................................................................6, 8, 9

*Marciano v. DCH Auto Grp.*,
14 F. Supp. 3d 322 (S.D.N.Y. 2014)....................................................................................9

*Minelli Constr. Co., Inc. v. Volmar Constr., Inc.*,
82 A.D.3d 720 (N.Y. App. Div. 2011) ..................................................................................5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)............................................................................................................10

*Pelligrino v. Morgan Stanley Smith Barney LLC*,
No. 17-CV-7865(RA), 2018 WL 2452768 (S.D.N.Y. May 31, 2018) .........................5, 6, 7, 9

*Powe v. AT&T Mobility*,
No. 15-22-GFVT, 2016 U.S. Dist. LEXIS 197699 (E.D. Ky. Mar. 25, 2016)..........................4

*Smith v. Spizzirri*,
601 U.S. 472 (2024)..........................................................................................................11

*Stephenson v. AT&T Servs., Inc.*,
No. 21-0709, 2021 WL 3603322 (E.D. Pa. Aug. 13, 2021) ....................................................4

*Stewart v. AT&T Mobility Servs., LLC*,
No. SACV 17-02076-CJC(FFMx), (C.D. Cal. Feb. 5, 2018) ....................................................4

*Tatis v. DoorDash, Inc.*,
No. 25-cv-4764 (VSB)(OTW), 2026 WL 743516 (S.D.N.Y. Mar. 16, 2026)....................5, 10

*Versmesse v. AT&T Mobility LLC*,
No. 3:13 CV 171, 2014 U.S. Dist. LEXIS 27816 (N.D. Ind. Mar. 4, 2014) ............................4

*Wagman v. AT&T Mobility Servs., LLC*,
No. 14CV05477 (Or.–Multnomah Cnty. Sep. 17, 2014)..........................................................5

**Statutes**

9 U.S.C. § 3.........................................................................................................................4, 11

9 U.S.C. § 4..............................................................................................................................4

**Other Authorities**

Restatement (Second) of Contracts § 24.................................................................................6

On November 30, 2011, Plaintiff John Revy ("Revy") received the first of three emails advising him that his employer, AT&T Services, Inc. ("AT&T" or the "Company"), was implementing an arbitration program. The emails stated that if Revy did not opt out of the program on or before February 6, 2012, both he and AT&T would be mutually bound to arbitrate all disputes arising between them. Revy did not opt out. Accordingly, he became contractually obligated to resolve all disputes with AT&T through arbitration, including this lawsuit. Consistent with the strong federal policy favoring arbitration, AT&T now brings this motion and asks that the Court enter an Order: (1) enforcing Revy's pre-dispute arbitration with AT&T, pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 4; and (2) granting a stay of the proceedings while the parties arbitrate the dispute.

## I. AT&T OFFERED, AND REVY ACCEPTED, AN AGREEMENT TO MUTUALLY ARBITRATE CLAIMS

Revy worked for AT&T from June 8, 2009 to June 15, 2022. ECF No. 1 ("Compl."), ¶¶ 20, 129. Throughout this time, Revy's unique work-provided email address was JR903h@att.com. Declaration of Jennifer Reyes ("Reyes Decl."), ¶ 7; Declaration of Steven Dewey ("Dewey Decl.), ¶¶ 4-5. AT&T required Revy, as its employee, to monitor his work email and respond appropriately. Reyes Decl., ¶ 7.

On November 30, 2011, AT&T sent a "Notice Regarding Arbitration Agreement" to Revy's work email with the subject line "Action Required: Arbitration Agreement." *Id.*, ¶ 13 & Ex. 1. To do so, AT&T used the same process it has used in years prior (and many years after) to distribute similar communications to large groups of employees. *Id.*, ¶¶ 11-17; Dewey Decl., ¶ 5. All systems involved in the email delivery worked together reliably and as intended. *Id.*, ¶ 12.

The email AT&T sent Revy on November 30, 2011, explained that the Company had created an arbitration process for resolving disputes between it and its employees as an alternative

to courts and juries. *Id.*, ¶ 13 & Ex. 1. The email itself contained all of the material terms of the Management Arbitration Agreement ("MAA" or "Agreement"). *Id.* It explained that under the MAA, "employees and the company would use independent, third-party arbitration rather than courts or juries to resolve legal disputes." *Id.*, Ex. 1. "Arbitration is more informal than a lawsuit in court, and may be faster," the email continued. *Id.* The email further told Revy that it was important that he review the MAA linked at the bottom of the email via a link labeled "Click here to review." *Id.*

AT&T gave Revy approximately 60 days – until 11:59 p.m. Central Standard Time on Monday, February 6, 2012 – to decide whether he wanted to participate in the MAA. *Id.*, ¶¶ 13, 14 & Ex. 1. The email made clear that if he did not opt out, Revy was agreeing to arbitrate any claims instead of proceeding in court. *Id.*, Ex. 1. First, the email informed Revy that "If you do not opt out by the deadline, you are agreeing to the arbitration process as set forth in the Agreement. This means that you and AT&T are giving up the right to a court or jury trial on claims covered by the Agreement." *Id.* Second, the email concluded in bold-faced type, "**Important: February 6, 2012 is the deadline to act if you do not wish to resolve disputes through arbitration**." *Id.* The email also provided instructions to opt out: Revy simply needed to click the link at the bottom of the email to open the MAA, enter his username and confidential password, and then click a link on the first page of the Agreement to electronically register his opt-out decision. *Id.*, ¶ 22 & Exs. 1, 2.

AT&T subsequently sent that same email to Revy two more times while he considered AT&T's offer, once on December 15, 2011, and again on January 18, 2012. *Id.*, ¶¶ 14, 18 & Ex. 3. None of these three emails generated any undeliverable or "bounce back" message that would indicate a failure in the delivery process. *Id.*, ¶¶ 19-21. In other words, all three notices about the

MAA and Revy's obligation to opt out of the program if he did not wish to be bound were properly delivered to Revy's inbox at AT&T. *Id.*

AT&T retained records for employees who opted out of the MAA during that 60-day period. *Id.*, ¶ 23. Thousands elected to do so. *Id.* Revy did not. *Id.*, ¶ 24. He subsequently worked at AT&T and enjoyed the benefit of AT&T's promise to arbitrate any claims it might have against him for approximately ten more years beyond the opt-out deadline. Compl., ¶ 129.

On October 14, 2025, Revy filed a Complaint against AT&T. *See generally*, Compl. His Complaint alleges discrimination, retaliation, and hostile work environment based on sex under Title VII; sex discrimination, retaliation, age discrimination under New York State Human Rights Law; and age discrimination under the Age Discrimination in Employment Act ("ADEA"). Compl., ¶¶ 145-210.

But, pursuant to the MAA's terms, Revy agreed to submit these claims to "final and binding arbitration instead of court litigation." Reyes Decl., Ex. 2. On October 24, 2025, AT&T sent Revy's counsel a letter informing them of the MAA, including a copy of the Agreement and citations to cases in which courts have compelled arbitration based on similar facts. Declaration of Sara B. Tomezsko ("Tomezsko Decl."), ¶ 4, Ex. A. The parties continued to meet and confer, but Revy ultimately refused to stipulate to arbitration, necessitating this motion. *Id.*, ¶¶ 5-7.

## II. <u>THIS COURT SHOULD COMPEL REVY'S CLAIMS TO ARBITRATION AND STAY ALL PROCEEDINGS</u>

AT&T and Revy mutually agreed to arbitrate any claims against the other, and their Agreement is enforceable under the FAA.[1] "To determine whether a particular dispute is arbitrable, the Court asks whether the parties agreed to arbitrate, and if so, whether the claim at

[1] The Agreement, by its terms, is "governed by the Federal Arbitration Act" and expressly "evidences a transaction involving commerce." Reyes Decl., Ex. 2.

issue falls within the scope of the agreement to arbitrate." *Krafczek v. Cablevision Sys. Corp.*, No. 17-cv-2915 (JMA)(SIL), 2018 WL 8918077, at *2 (E.D.N.Y. Apr. 25, 2018). If those two questions are answered in the affirmative, "the Act leaves no place for the exercise of discretion." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). This Court *must* "direct[] the parties to proceed to arbitration in accordance with the terms of the" Agreement and stay all proceedings pending completion of arbitration. 9 U.S.C. §§ 3–4.

Because AT&T can satisfy both requirements, this Court should join the many others that have compelled arbitration when presented with identical facts. *See, e.g.*, *Couch v. AT&T Servs., Inc.*, No. 13-cv-2004 (DRH)(GRB), 2014 WL 7424093 (E.D.N.Y. Dec. 31, 2014) (compelling arbitration under MAA where plaintiff received three emails identical to the emails Revy received and failed to opt out by the stated deadline).[2]

---

[2] *See also Casias v. AT&T Servs., Inc.*, No. 1:23-cv-05944-JPB-RDC, 2024 U.S. Dist. LEXIS 101709, at *11–12 (N.D. Ga. June 7, 2024), *report and recommendation adopted*, 2024 U.S. Dist. LEXIS 252607 (N.D. Ga. June 24, 2024) ("After Plaintiff had reasonable notice of the arbitration agreement, she continued to work for Defendant and did not opt out of the agreement. That is enough to show that she assented to the terms of the arbitration agreement."); *Stephenson v. AT&T Servs., Inc.*, No. 21-0709, 2021 WL 3603322 (E.D. Pa. Aug. 13, 2021) (same); *Bolden v. AT&T Servs., Inc.*, 350 F. Supp. 3d 1029, 1036 (D. Kan. 2018) (concluding "that plaintiff, an employee of AT&T, had sufficient notice of the arbitration program and a reasonable opportunity to opt out of the program such that AT&T could reasonably construe her silence as an agreement to arbitrate her disputes"); *AT&T Mobility Servs., LLC v. Payne*, No. 3:17-cv-0649-CRS, 2018 WL 935441 (W.D. Ky. Feb. 16, 2018) (same); *Stewart v. AT&T Mobility Servs., LLC*, No. SACV 17-02076-CJC(FFMx), (C.D. Cal. Feb. 5, 2018) (same); *AT&T Mobility Servs. LLC v. Inzerillo*, No. 4:17-cv-00841-HFS, 2018 U.S. Dist. LEXIS 231537, at *5–7 (W.D. Mo. Jan. 31, 2018) (holding the plaintiff's "failure to opt out of the arbitration program and his continued employment at AT&T is sufficient to show that he accepted the terms of the arbitration agreement"); *Powe v. AT&T Mobility*, No. 15-22-GFVT, 2016 U.S. Dist. LEXIS 197699, at *7–8, *9–10 (E.D. Ky. Mar. 25, 2016) (enforcing an arbitration agreement a plaintiff denied receiving via e-mail where it was "undisputed that [the plaintiff] did not opt out of the agreement and continued to work for [the defendant] after the arbitration agreement came into effect"); *Cornoyer v. AT&T Mobility Servs., LLC*, No. 15-0474 JB/WPL, 2016 U.S. Dist. LEXIS 140109, at *37 (D.N.M. Oct. 5, 2016) ("[W]hen, in accordance with the agreement's terms, [the plaintiff] did not take action to opt out of the Management Arbitration Agreement . . . he manifested his acceptance"); *Versmesse v. AT&T Mobility LLC*, No. 3:13 CV 171, 2014 U.S. Dist. LEXIS 27816, at *17 (N.D. Ind. Mar. 4, 2014)

## I. AT&T's Evidence Demonstrates the Existence of a Valid and Enforceable Agreement to Arbitrate.

The evidence submitted alongside this motion more than demonstrates that the parties agreed to arbitration. A party seeking to compel arbitration must make a prima facie showing that an agreement to arbitrate existed by a preponderance of the evidence. *Pelligrino v. Morgan Stanley Smith Barney LLC*, No. 17-CV-7865(RA), 2018 WL 2452768, at *3 (S.D.N.Y. May 31, 2018). Courts in the Second Circuit "apply a standard similar to that applicable for a motion for summary judgment" to determine whether there is a genuine issue of material fact relating to the formation of the arbitration agreement. *Chung v. Royal Care, Inc.*, No. 23-CV-07962 (OEM) (LKE), 2025 WL 1029432, at *3 (E.D.N.Y. Jan. 8, 2025), *report and recommendation adopted*, 2025 WL 809900 (E.D.N.Y. Mar. 14, 2025) (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). "In the absence of a genuine issue of material fact regarding the formation of the arbitration agreement, the motion to compel and to stay the litigation (in whole or in part) must be granted if the dispute falls within the scope of the arbitration agreement." *Tatis v. DoorDash, Inc.*, No. 25-cv-4764 (VSB)(OTW), 2026 WL 743516, at *3 (S.D.N.Y. Mar. 16, 2026).

The question of contract formation is one of state law. *Couch*, 2014 WL 7424093, at *3. In New York, "courts look to the basic elements of the offer and the acceptance to determine whether there is an objective meeting of the mind [,][and][t]he manifestation or expression of assent necessary to form a contract may be by word, act, or conduct which evinces the intention of the parties to contract." *Id.* (quoting *Minelli Constr. Co., Inc. v. Volmar Constr., Inc.*, 82 A.D.3d

---

("Plaintiff did not opt out of the agreement by the deadline . . . and therefore assented to the terms of the agreement" to arbitrate); *Wagman v. AT&T Mobility Servs., LLC*, No. 14CV05477 (Or.–Multnomah Cnty. Sep. 17, 2014); *Danielski v. AT&T*, Cause No. D-1-GN- 14-000718 (Tex. Dist.–Travis Cnty. May 28, 2014).

720, 721 (N.Y. App. Div. 2011) (alterations in original)). The record offered in support of this motion establishes all elements of a binding contract necessary to compel arbitration.

**1. AT&T Offered, and Revy Received, the MAA via Email.**

Under New York law, "an offer is the manifestation of willingness to enter into a bargain and that it must be definite and certain." *Concilla v. May*, 214 A.D.2d 848, 849 (N.Y. App. Div. 1995) (citing Restatement (Second) of Contracts § 24). AT&T made an offer when it sent Revy a copy of the MAA via email three times—on November 30, 2011; again on December 15, 2011; and once more on January 18, 2012. Reyes Decl., ¶ 18, Ex. 3. Each email laid out the material terms of the MAA—that is, the mutual promises to arbitrate, the nature of the claims subject to arbitration, and the exclusive nature of the arbitration remedy—and specified a method and deadline for acceptance. *Id.*, Ex. 1. They also referenced and linked to the full text of the MAA. *Id.* As the emails clearly explained, Revy could accept AT&T's offer by doing nothing and continuing to work at AT&T, or he could reject it by opting out. *Id.*

AT&T is entitled to a presumption that Revy received all three emails and was therefore on notice of AT&T's offer. "It is settled that 'New York law has established a presumption that a party has received documents when mailed to the party's address in accordance with regular office procedures.'" *Chung*, 2025 WL 1029432, at *3 (quoting *Manigault v. Macys E., LLC*, 318 F. App'x 6, 7 (2d Cir. 2009) (summary order); citing *Couch*, 2014 WL 7424093, at *6; *CIT Bank N.A. v. Schiffman*, 36 N.Y.3d 550, 556 (N.Y. 2021)). The presumption of receipt applies to both physical mail and email. *Pelligrino*, 2018 WL 2452768, at *3 ("Courts have applied this presumption [of receipt] in the email context, and this Court sees no reason not to do so as well.") (collecting cases).

Here, AT&T used the same process to distribute emails about the MAA as it did to disseminate hundreds of communications to AT&T employees for review and acknowledgement, using the Promenta application in conjunction with AT&T's email application, Outlook. Reyes Decl., ¶ 11. Promenta was programmed to send multiple emails about the MAA to over 100,000 management employees, including Revy. *Id.*, ¶¶ 12-14. The emails were sent to Revy's unique AT&T-provided email address—the same email address that Revy was required to monitor and respond appropriately to as an AT&T employee. *Id.*, ¶¶ 7, 18 & Ex. 3. AT&T's records kept in the ordinary course of business demonstrate that the emails were successfully delivered, and the absence of any undeliverable message confirms that fact. *Id.*, ¶¶ 16, 18-21. That thousands of Revy's colleagues received the same notice he did and exercised their right to opt out is further proof of the sufficiency of AT&T's delivery methods. *Id.* ¶ 23. *See Frazier v. Morgan Stanley*, No. 16 Civ. 804 (RJS), 2018 WL 11585450, at *7 (S.D.N.Y. Nov. 29, 2018).

Therefore, Revy received all three emails containing AT&T's offer to mutually arbitrate claims, and was on notice that if he did not opt out he would be bound. *See, e.g.*, *Chung*, 2025 WL 1029432, at *4 (compelling arbitration and holding defendant employer entitled to presumption of receipt where declarants testified that normal office mailing procedures were followed in distributing arbitration agreements to employees); *Pelligrino*, 2018 WL 2452768, at *3 (compelling arbitration; employer was entitled to presumption of receipt of emails sent to employee about change to arbitration program and opportunity to opt out, and employer's records indicated that plaintiff's work email did not generate out of office automatic response and that employee was not on leave at the time); *Couch*, 2014 WL 7424093, at *6 (compelling arbitration against AT&T employee involved in same distribution of MAA as Revy; declarations showed that plaintiff received three emails notifying him about MAA even though he denied receiving emails).

**2. Revy Accepted that Agreement by Failing to Opt Out.**

After receiving all three emails about the MAA, Revy then did exactly what AT&T asked him to do if he wished to accept AT&T's offer: he refrained from exercising the right to opt out and continued working beyond the deadline. "Under New York law, the conduct of the parties may lead to the inference of a binding agreement." *Chung*, 2025 WL 1029432, at *8 (quoting *Beth Israel Med. Ctr. V. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 582 (2d Cir. 2006)). The Second Circuit has repeatedly held that an employee's choice to continue working without exercising the right to opt out of an arbitration program constitutes acceptance of the agreement. *See Manigault*, 318 F. App'x at 8 (plaintiff agreed to arbitrate claims with employer by receiving dispute resolution program materials including opt out form, and continued to work beyond out-opt deadline); *Brown v. St. Paul Travelers Cos.*, 331 F. App'x 68, 69–70 (2d Cir. 2009) (summary order) (affirming grant of motion to dismiss and compel arbitration; employee assented to arbitration program in revised employee handbook where multiple email notices advised plaintiff that compliance with all handbook policies was a condition of continued employment and that it was her responsibility to read and understand all company policies).

District Courts within the Second Circuit have affirmed this same conclusion, including when enforcing the precise MAA at issue. *Couch*, 2014 WL 7424093, at *4–8 (no genuine issue of fact existed as to making of arbitration agreement where AT&T used same distribution methods described above to distribute same MAA emails that Revy received in 2011 and 2012; holding AT&T was entitled to presumption that plaintiff received emails despite plaintiff's unadorned denials of receipt, and plaintiff accepted MAA by continuing to work for AT&T without opting out by deadline); *see also Chung*, 2025 WL 1029432, at *8 (compelling arbitration where plaintiffs presumably received arbitration agreement mailed to them in accordance with defendant's regular

mailing procedures, arbitration agreement provided that continued employment beyond 14 days of receipt constituted acceptance, and employees continued to work for company after stated deadline); *Pelligrino*, 2018 WL 2452768, at *3 (compelling arbitration where plaintiff received emails about change to arbitration program and ability to opt out, but failed to do so and continued working for employer; "an employee may consent to a modification of the terms of employment by continuing to work after receiving notice of the modification") (quoting *Manigault*, 318 F. App'x at 7); *Clearfield v. HCL Am. Inc.*, No. 17-CV-1933 (JMF), 2017 WL 2600116, at *1–2 (S.D.N.Y. June 14, 2017) (compelling arbitration where employer sent email to all employees, including plaintiff, advising that company had modified dispute resolution program and gave employees opportunity to opt out if they did not wish to be bound; plaintiff did not submit opt out form or otherwise notify company of her intent to exclude herself from dispute resolution process, so parties formed enforceable arbitration agreement under New York law).

Revy thus had notice of the terms of AT&T's offer and the consequences of remaining silent if he did not intend to accept that offer. Unlike thousands of his colleagues, Revy accepted AT&T's offer by choosing not to opt out by the deadline and continuing to work at AT&T.

**3. A Mutual Promise to Arbitrate is Adequate Consideration.**

The Agreement is supported by adequate consideration because the promise to arbitrate claims was mutual. Both Revy and AT&T were required by the Agreement to arbitrate any claims they might have had against each other. *See* Reyes Decl., ¶ 15, Exs. 1, 2. This mutual promise to arbitrate constitutes sufficient consideration. *See, e.g.*, *Chung*, 2025 WL 1029432, at *9 ("An arbitration agreement is supported by adequate consideration where 'it binds both parties to arbitrate their claims.'") (collecting cases); *Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 337 (S.D.N.Y. 2014) ("the [arbitration] Agreement by itself contains sufficient consideration because,

as discussed, it mutually binds both parties to submit claims exclusively to arbitration.") (collecting cases).

## III. REVY'S CLAIMS ARE WITHIN THE SCOPE OF THE AGREEMENT

The Second Circuit has long recognized that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Guyden v. Aetna Inc.*, 544 F.3d 376, 382 (2d Cir. 2008) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). Accordingly, "arbitration should be compelled unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Tatis*, 2026 WL 743516, at *4 (citation omitted).

Here, the scope of the Agreement between AT&T and Revy is broad and encompasses all of the claims asserted in Revy's Complaint:

> This agreement applies to any claim that you may have against any of the following: (1) any AT&T company, (2) its present or former officers, directors, employees or agents in their capacity as such or otherwise, (3) the Company's parent, subsidiary and affiliated entities, and all successors and assigns of any of them; and this agreement also applies to any claim that the Company or any other AT&T company may have against you. Unless stated otherwise in this Agreement, covered claims include without limitation those arising out of or related to your employment or termination of employment with the Company and any other disputes regarding the employment relationship, . . . termination, defamation, retaliation, discrimination or harassment and claims arising under the . . . Civil Rights Act of 1964, . . . Age Discrimination in Employment Act, . . . and state statutes and local laws, if any, addressing the same or similar subject matters, and all other state and local statutory and common law claims. This Agreement survives after the employment relationship terminates.

*See* Reyes Decl., Ex. 2; *see also id.*, Ex. 1 ("AT&T has created an alternative process for resolving disputes between the company and employees."). By its express terms, the MAA requires

arbitration of claims under Title VII (*i.e.*, "Civil Rights Act of 1964"), the ADEA, and the various other state law claims pled in Revy's Complaint. *Id.*, Ex. 2. All of these statutory claims are arbitrable. *See, e.g.*, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991) (ADEA claims can be arbitrated because nothing in the text or legislative history of ADEA precludes arbitration, and there is no inherent conflict between arbitration and the ADEA's underlying purposes); *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 244 (S.D.N.Y. 2020) ("[c]ourts have routinely held that employment and Title VII claims are arbitrable.") (collecting cases), *objections overruled*, No. 10 Civ. 6950 (AT)(RWL), 2021 WL 4199912 (S.D.N.Y. Sep. 15, 2021); *Fletcher v. Kidder, Peabody & Co.*, 81 N.Y.2d 623, 632 (1993), *cert. denied*, 510 U.S. 993 (1993) (discrimination claims brought under NYSHRL had closest analog in Title VII, and therefore were arbitrable under FAA).

As such, Revy must pursue his federal statutory claims in arbitration, as he agreed to do.

## IV. THIS COURT SHOULD STAY THIS ACTION PENDING ARBITRATION

The FAA mandates that a district court "*shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. As Revy's claims are arbitrable, this Court should stay this case until his claims have been arbitrated. *Smith v. Spizzirri*, 601 U.S. 472, 479 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.").

## V. CONCLUSION

AT&T and Revy are bound by a valid arbitration agreement. Revy's consent to the Agreement is clear—from both his choice not to opt out and his continued employment. And, his entire action falls within the scope of the Agreement. For the foregoing reasons, AT&T requests

that this Court order Revy to submit his claims to arbitration pursuant to the Agreement and stay this proceeding pending its completion.

Dated: May 26, 2026

Respectfully submitted,

By: ______________________________

Sara B. Tomezsko
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
Tel: (212) 318-6000
Fax: (212) 319-4090
saratomezsko@paulhastings.com

*Attorneys for Defendant*
AT&T Services Inc.