UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

JOHN D. REVY,

Plaintiff,

-against -

AT&T SERVICES INC.,

Defendant.

--------------------------------------------------------------x

Case No. 25-cv-05744

**DECLARATION OF JENNIFER REYES IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

COMES NOW, JENNIFER REYES, and pursuant to 28 U.S.C. § 1746, declares as follows:

1. I am a citizen of the United States, over the age of 18, and competent to testify as to the matters contained in this Declaration.

2. I have personal knowledge of the facts set forth in this Declaration, or I have knowledge of such facts based upon information from business records of AT&T and its affiliates and subsidiaries (collectively, "AT&T" or the "Company") in my custody and control.

3. I am currently employed by AT&T as a Lead HR Generalist and have held this role since April 16, 2024.

4. In my capacity as a Lead HR Generalist, I have access to the Centralized Employee Table ("CENET"), AT&T's Human Resources data repository which holds current and historical information in the regular course of business for AT&T's employees.

5. AT&T assigns each employee a unique user identification number ("ATTUID") and CENET contains the employee's ATTUID in the regular course of business. Plaintiff John Revy ATTUID is JR903h.

6. I searched the Company's CENET records using ATTUID JR903h to locate details about John Revy and his employment. For instance, I can confirm that, in late 2011 and early 2012, AT&T employee John Revy with ATTUID JR903h worked at 810 7th Ave, New York, NY as an Application Sales Executive 2 SBS MAC.

7. AT&T also assigns each employee a unique email address. According to CENET, Plaintiff John Revy's email address is JR903h@att.com. AT&T employees are generally expected to review and respond to emails sent to their corporate- provided email address. AT&T regularly sends important announcements to employees at their corporate-provided email address.

8. AT&T employees are given access to AT&T's network and various computer systems in the course of their employment. Access to such systems requires a unique username (the employee's ATTUID) and a confidential password of the employee's choosing. Disclosing an individual's password is contrary to AT&T policy to safeguard the integrity and confidentiality of AT&T's network, systems, and electronic data.

9. My job duties as a Lead HR Generalist require me to be familiar with the Management Arbitration Agreement (the "Agreement") distributed by AT&T to certain of its management employees.

10. During late 2011 and early 2012, including the time period from November 30, 2011 through February 6, 2012, AT&T distributed notifications to its employees that they were eligible to participate in a voluntary program under which all disputes between the Company and

AT&T employees covered by the program would be resolved by binding arbitration (the "Arbitration Program") as described in the Agreement.

11. During late 2011 and early 2012, AT&T utilized a software program called "Promenta," which permitted a user to enter email text (including links to documents located elsewhere on AT&T's intranet systems) and select large groups of recipients. AT&T used Promenta to communicate hundreds of AT&T policies to AT&T employees for review and acknowledgment.

12. Promenta worked in connection with an email account in Microsoft Outlook, AT&T's email application (the "Email Account"). The Email Account was used as a vehicle for Promenta to send communications about the Agreement and notifications about other AT&T policies through AT&T's SAP learning system. I have had, and continue to have, access to the Email Account in the course of my job duties. In my experience, Promenta and the Email Account reliably worked in combination to distribute communications and track employee acknowledgments.

13. In the days prior to November 30, 2011, AT&T entered the text of the exemplar email attached as Exhibit 1 to my Declaration into Promenta and designated that email to be sent beginning November 30, 2011, to all AT&T's U.S.-based management employees. The Bulletin ID assigned to this distribution was 60594440. Promenta was designed to send approximately 20,000 emails per night to a total population of approximately 103,906 U.S.-based management employees; therefore, it took approximately five nights to complete delivery of the email to the entire target audience. The email to each of these employees contained the subject heading "Action Required: Arbitration Agreement." A true and correct copy of the text of that email is attached to my Declaration as Exhibit 1.

14. AT&T also used Promenta to send multiple "reminder" emails, identical to those sent on November 30, 2011, during the 60-day opt-out period employees had to consider the Agreement and record their decision to opt out of the Arbitration Program.

15. Before the first of the emails described in paragraph 13 above were delivered, AT&T used Promenta to "publish" the full text of the Agreement to a location on AT&T's corporate intranet ("intranet page"). Once "published," the Agreement was immediately accessible on the intranet page to all employees who were designated to receive the notification email. A true and correct copy of the text of the Agreement that AT&T published is attached to my Declaration as Exhibit 2. From that point forward, employees could access the Agreement by visiting the intranet page directly, as well as through the link contained in the exemplar email at Exhibit 1.

16. When Promenta was used to automate the distribution of an email, AT&T's computer system generated a log of all emails sent through the SAP learning system including time and date sent, the sender, the recipient, and the subject line. In the example discussed in paragraph 13 above, the SAP learning system would generate a table showing the email address of each of the recipients of the email, along with the day the email distribution started.

17. On June 1, 2021, AT&T ceased using the Promenta program. In the months leading up to June 1, 2021, AT&T worked with the Promenta team to export all data associated with the Arbitration Program from Promenta and AT&T's SAP learning system to AT&T's Management Arbitration Campaign ("MAC") application so that AT&T could continue to access historical data. Since June 1, 2021, the data associated with the Arbitration Program have been accessible in MAC in the regular course of business.

18. On May 21, 2026, I utilized a search function in MAC to retrieve a list of all emails for Bulletin ID 60594440 sent through SAP learning the system from November 30, 2011 through February 6, 2012 to ATTUID JR903h using the email address JR903h@us.att.com. From the results of that query, I have determined that emails with the subject heading "Action Required: Arbitration Agreement," and contents identical to those of the email attached to my Declaration as Exhibit 1, were sent to recipient JR903h@us.att.com on November 30, 2011 at 10 p.m. Pacific Time; December 15, 2011 at 5:05 a.m. Pacific Time; and January 18, 2012 at 12:04 a.m. A screenshot of the query results showing this data is attached to my Declaration as Exhibit 3.

19. In addition to using Promenta to send the email notifications about the Agreement, AT&T uses the Email Account to collect any responses from employees (*e.g.*, questions about the Agreement from employees) in the ordinary course of business. Microsoft Outlook automatically generates certain responses to emails when there is an issue or problem associated with the delivery of an email. For example, a user can set up an automatic reply that notifies senders that the user cannot immediately respond (for example, because he or he is on vacation or in a meeting). Microsoft Outlook also automatically generates a response when an email is returned as undeliverable (such as when the file is too large to permit delivery, or an email address is incorrect). The Email Account is used to collect any automatic reply messages or undeliverable messages received in response to the notifications about the Agreement in the ordinary course of business.

20. All emails received by the Email Account during the rollout of the Arbitration Program from November 30, 2011 through February 6, 2012 have been retained in the ordinary course of business.

21. On May 21, 2026, I accessed the file containing the emails described in paragraph 20 above and searched for the terms "John Revy", "Revy, John", and "JR903h". My search returned no results for the terms "John Revy", "Revy, John", and "JR903h"; there were no automatic replies or undeliverable messages with these terms or from an employee with this ATTUID received by the Email Account.

22. My job duties as a Lead HR Generalist also require me to be familiar with the opt-out process the Company put in place for those employees who chose not to be bound by the Agreement (the "Opt-out Process"). Instructions for opting out of the Agreement were laid out in the email attached to this Declaration as Exhibit 1 and in the Agreement attached to this Declaration as Exhibit 2. The Opt-out Process consisted of accessing a link to a site where the employee would be able to electronically register his or her decision to opt out.

23. AT&T's computer system was configured to contemporaneously record the employee's name and ATTUID to an electronic spreadsheet (the "Master List") whenever an employee went through the Opt-out Process. From time to time, both before the Agreement was distributed and during the period from November 30, 2011 to February 6, 2012, AT&T tested the Opt-out Process to ensure that the names of employees electronically registering their decisions to opt out were correctly recorded on the Master List. Those tests demonstrated that the Opt-out Process accurately and reliably recorded opt-out information on the Master List. Indeed, during the designated opt-out period thousands of employees exercised their right to opt out of the Agreement, and the Master List recorded their names and ATTUIDs. The Master List has been retained in the ordinary course of business.

24. On May 21, 2026, I searched the Master List using the search terms ""John Revy", "Revy, John", and "JR903h". My search for those terms in the Master List produced no

results. There is no record of any individual with the ATTUID JR903h in the Master List and, therefore, no record of anyone with that ATTUID opting out of the Agreement. If John Revy with ATTUID JR903h had opted out, her name and ATTUID would appear on the Master List, and they do not.

**PURSUANT TO 28 U.S.C. § 1746, I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT. I AM AWARE THAT IF ANY OF THE FOREGOING STATEMENTS MADE BY ME ARE FALSE, I AM SUBJECT TO PUNISHMENT.**

Executed this 26th day of May, 2026 at San Antonio, Texas.

Signed by:
Jennifer Reyes
5E727514226B44F...

JENNIFER REYES