**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN D. REVY,<br><br>Plaintiff,<br><br>v.<br><br>AT&T SERVICES INC.<br><br>Defendant. | Case No. 25-cv-05744<br><br>**Oral Argument Requested** |

**REPLY IN SUPPORT OF DEFENDANT'S**
**MOTION TO COMPEL ARBITRATION AND STAY ALL PROCEEDINGS**

**TABLE OF CONTENTS**

**Page**

I. REVY HAS NOT REBUTTED AT&T'S EVIDENCE DEMONSTRATING OFFER AND ACCEPTANCE OF A MUTUAL AGREEMENT TO ARBITRATE. .... 1

A. AT&T Is Entitled to a Presumption of Receipt. .... 2

B. Revy's Attacks on AT&T's Declarations Are Ineffective. .... 2

C. Revy's Declaration Does Not Rebut the Presumption of Receipt and AT&T's Evidence that Revy Was On Notice of Its Offer. .... 5

D. Revy's Conduct Constitutes Acceptance of AT&T's Offer. .... 8

II. CONCLUSION .... 9

**TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Alvarez v. Coca-Cola Refreshments, USA, Inc.*,
914 F. Supp. 2d 256 (E.D.N.Y. 2012) .......... 7

*Bank of New York Mellon v. Gordon*,
171 A.D.3d 197, 97 N.Y.S.3d 286 (N.Y. App. Div. 2019) .......... 4

*Barrows v. Brinker Rest. Corp.*,
36 F.4th 45 (2d Cir. 2022) .......... 5

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
448 F.3d 573 (2d Cir. 2006) .......... 8

*Burns v. AT&T Mobility, LLC*,
No. 25DTCV08446, 2025 Cal. Super. LEXIS 79270 (Super. Ct. Los Angeles Cnty. Dec. 11, 2025) .......... 4

*Chung v. Royal Care, Inc.*,
No. 23-CV-07962 (OEM) (LKE), 2025 WL 1029432 (E.D.N.Y. Jan. 8, 2025), *report and recommendation adopted*, 2025 WL 809900 (E.D.N.Y. Mar. 14, 2025) .......... 2, 6, 8

*CIT Bank N.A. v. Schiffman*,
36 N.Y.3d 550 (2021) .......... 2, 3, 4

*Cleaves v. AT&T Mobility, LLC*,
No. 1:25-CV-4687-VMC-JSA, 2025 U.S. Dist. LEXIS 267454 (N.D. Ga. Dec. 29, 2025) .......... 4

*Couch v. AT & T Servs., Inc.*,
No. 13-CV-2004 (DRH)(GRB), 2014 WL 7424093 (E.D.N.Y. Dec. 31, 2014) .......... 2, 5, 7, 8

*D.M Rothman & Co. v. Korea Com. Bank of New York*,
411 F.3d 90 (2d Cir. 2005) .......... 6

*Holcomb v. TWR Express, Inc.*,
11 A.D.3d 513 (N.Y. App. Div. 2004) .......... 8

*Krafczek v. Cablevision Sys. Corp.*,
No. 17-cv-2915 (JMA)(SIL), 2018 WL 8918077 (E.D.N.Y. Apr. 25, 2018) .......... 1

*Manigault v. Macy's E., LLC*,
318 F. App'x 6 (2d Cir. 2009) .......... 2, 6, 7, 8

*McCarthy v. Wachovia Bank, N.A.*,
759 F. Supp. 2d 265 (E.D.N.Y. 2011) ....................................................................9

*Meckel v. Cont'l Res. Co.*,
758 F.2d 811 (2d Cir. 1985)................................................................................2

*Metzger v. Aetna Ins. Co.*,
227 N.Y. 411 (1920) ..........................................................................................8

*Moon Choung v. Allstate Ins. Co.*,
283 A.D.2d 468 (N.Y. App. Div. 2001) ..............................................................8

*Pierre v. Hilton Rose Hall Resort & Spa*,
No. 14 CIV. 3790 (VMS), 2016 WL 4742281 (E.D.N.Y. Sep. 12, 2016) ...............................5

*Reimer v. AT&T Mobility, LLC*,
No. 6:24-CV-1883-WWB-LHP, 2025 WL 4738543 (M.D. Fla. June 12, 2025), *report and recommendation adopted*, 2025 WL 4738521 (M.D. Fla. Aug. 4, 2025) ..........................................................................................3

*Tinder v. Pinkerton Sec.*,
305 F.3d 728 (7th Cir. 2002) ..............................................................................5

*Tuskey v. Volt Info. Scis., Inc.*,
No. 00 Civ. 7410 (DAB) (GWG), 2001 WL 873204 (S.D.N.Y. Aug. 3, 2001)........................9

AT&T Services, Inc. ("AT&T" or the "Company") and Plaintiff John Revy ("Revy") are bound by a valid arbitration agreement. Revy received three emails from AT&T that notified him of the arbitration program (collectively, the "MAA Emails"). Those emails contained a link to the Management Arbitration Agreement ("MAA" or "Agreement") and clearly explained that if he did not opt out by the deadline, he would accept AT&T's offer to mutually arbitrate claims between them. Revy continued his employment without opting out, so his claims belong in arbitration.

Revy's opposition does nothing to alter that result. He disputes only the validity of the contract formed by the parties' conduct described above. But AT&T is entitled to a well-established presumption that Revy received notice of AT&T's offer (three times), and Revy cannot rebut that presumption with a self-serving, self-contradictory declaration. In arguing otherwise, Revy relies solely on a single decision that courts in this District have repeatedly rejected—including when ordering arbitration pursuant to the same MAA that binds Revy, on an identical factual record.

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3–4, this Court must order that result and stay all proceedings.

## I. <u>REVY HAS NOT REBUTTED AT&T'S EVIDENCE DEMONSTRATING OFFER AND ACCEPTANCE OF A MUTUAL AGREEMENT TO ARBITRATE.</u>

"To determine whether a particular dispute is arbitrable, the Court asks whether the parties agreed to arbitrate, and if so, whether the claim at issue falls within the scope of the agreement to arbitrate." *Krafczek v. Cablevision Sys. Corp.*, No. 17-cv-2915 (JMA)(SIL), 2018 WL 8918077, at *2 (E.D.N.Y. Apr. 25, 2018). If those two questions are answered in the affirmative, the motion must be granted. *Id*. Revy does not dispute the second. *See generally* Plaintiff's Brief in Opposition to Motion to Compel Arbitration ("Pl.'s Opp'n Br."). Therefore, the only question is whether the parties had an agreement to arbitrate: namely, whether Revy had notice of AT&T's offer and his

obligation to opt out if he did not wish to be bound. As the Eastern District of New York previously held on an identical factual record, the parties formed a valid and enforceable agreement to arbitrate claims.

**A. AT&T Is Entitled to a Presumption of Receipt.**

New York law affords AT&T a presumption that Revy received the three MAA Emails AT&T sent him, because AT&T relied on its standard method of email distribution. *See, e.g.*, *Chung v. Royal Care, Inc.*, No. 23-CV-07962 (OEM) (LKE), 2025 WL 1029432, at *3–4 (E.D.N.Y. Jan. 8, 2025), *report and recommendation adopted*, 2025 WL 809900 (E.D.N.Y. Mar. 14, 2025) (collecting cases); *Couch v. AT & T Servs., Inc.*, No. 13-CV-2004 (DRH)(GRB), 2014 WL 7424093, at *6–7 (E.D.N.Y. Dec. 31, 2014) (discussing the presumption at length). Revy argues that the presumption of receipt should not apply to contractual offers because the presumption "originates in the law of notice and service of process." Pl.'s Opp'n Br. at 7 (citing *Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 817 (2d Cir. 1985) (recognizing the presumption of receipt in the notice context)). He is wrong; courts have long applied the presumption in the context of contract formation, and specifically in the context of arbitration agreements. *See, e.g.*, *Chung*, 2025 WL 1029432, at *3–4 (applying the presumption of receipt and granting a motion to compel arbitration); *Couch*, 2014 WL 7424093, at *6–7 (same); *see also Manigault v. Macy's E., LLC*, 318 F. App'x 6, 7 (2d Cir. 2009) (applying the presumption of receipt and reversing denial of motion to compel arbitration).

**B. Revy's Attacks on AT&T's Declarations Are Ineffective.**

AT&T's declarations and supporting evidence are more than sufficient to establish the facts necessary for the presumption of receipt to arise. Those declarations need not come from an individual personally involved in the mailing to establish the routine mailing practices upon which the presumption is based. *CIT Bank N.A. v. Schiffman*, 36 N.Y.3d 550, 556 (2021) ("Such proof

need not be supplied by the employee charged with mailing the document. . . ."). Revy's own authorities note that the New York Court of Appeals "has long recognized a party can establish that a notice or other document was sent through evidence of actual mailing (e.g., an affidavit of mailing or service) or—as relevant here—by proof of a sender's routine business practice with respect to the creation, addressing, and mailing of documents of that nature." *Id.* (citations omitted). Further, "[e]vidence of 'an established and regularly followed office procedure' may give rise to a rebuttable 'presumption that such a notification was mailed to and received by the [intended recipient]'." *Id.* (citations omitted) (second alteration in original).

Here, Jennifer Reyes' sworn declaration is based on her personal knowledge as a Lead HR Generalist and business records of AT&T in her custody and control. Declaration of Jennifer Reyes ("Reyes Decl."). ¶¶ 2–4. She swears that, by virtue of her position, she is "require[d] to be familiar with the Management Arbitration Agreement (the 'Agreement') distributed by AT&T to certain of its management employees," as well as the corresponding opt-out process. *Id.* ¶¶ 9, 22. As a result, she is a custodian of the contemporaneous business records that AT&T's systems created at the time of the distribution of the MAA Emails to Revy, which are maintained in the ordinary course of business, now in the Management Arbitration Campaign ("MAC") system. *Id.* ¶¶ 13–24. Reyes also has access to the email account used to distribute the MAA Emails, which contemporaneously captured any communications indicating a failure in the delivery process such as bounce-backs or undeliverable messages. *Id.* ¶¶ 16–17, 19–20. As the current custodian of these business records and what they show, Reyes is more than qualified to testify to AT&T's standard business practices for the distribution of the MAA Emails. Several courts agree, having compelled arbitration in reliance on Reyes' testimony. *See, e.g.*, *Reimer v. AT&T Mobility, LLC*, No. 6:24-CV-1883-WWB-LHP, 2025 WL 4738543 (M.D. Fla. June 12, 2025), *report and recommendation*

*adopted*, 2025 WL 4738521 (M.D. Fla. Aug. 4, 2025) (granting motion to compel arbitration); *Cleaves v. AT&T Mobility, LLC*, No. 1:25-CV-4687-VMC-JSA, 2025 U.S. Dist. LEXIS 267454 (N.D. Ga. Dec. 29, 2025) (recommending that motion to compel arbitration be granted); *Burns v. AT&T Mobility, LLC*, No. 25DTCV08446, 2025 Cal. Super. LEXIS 79270 (Super. Ct. Los Angeles Cnty. Dec. 11, 2025) (granting motion to compel arbitration).[1]

In any event, Revy's attack on the *source* of the evidence only gets him so far, because "it is the business record itself, not the foundational affidavit, that serves as proof of the matter asserted." *Bank of New York Mellon v. Gordon*, 171 A.D.3d 197, 205, 97 N.Y.S.3d 286 (N.Y. App. Div. 2019). Those business records show that AT&T sent the MAA Emails to Revy's work email address on three separate occasions, none of which resulted in evidence suggesting a failure in the delivery process. Reyes Decl. ¶¶ 18–20. Revy speculates that the MAA Emails may nonetheless have been captured by an automatic filter, Pl.'s Opp'n Br. at 10, but no testimony or evidence supports this hypothetical scenario. The fact that thousands of Revy's peers received the MAA Emails and followed the instructions in those emails to opt out is inconsistent with Revy's automatic filter theory. Reyes Decl. ¶ 23. In fact, Revy's own testimony suggests that the MAA Emails were among "a high volume of mass and automated company-wide messages" that landed in his inbox that he chose not to read, despite his obligation to do so as an AT&T employee.[2] Declaration of John D. Revy ("Revy Decl."), at ¶ 5.

---

[1] Revy also fails to suggest, much less argue, that there were deviations in AT&T's standard distribution process such that the presumption of receipt would not attach. His own authorities note that to rebut the presumption of receipt, "there must be proof of a material deviation from an aspect of the office procedure that would call into doubt whether the notice was properly mailed, impacting the likelihood of delivery to the intended recipient." *CIT Bank*, 36 N.Y.3d at 557. There is no such proof in the current record.

[2] Finally, Revy argues in a footnote that AT&T's records are "internally inconsistent" with respect to his email address (ending either "@att.com" or "@us.att.com") and that "AT&T neither acknowledges nor reconciles this discrepancy." Pl.'s Opp'n Br. at 10, n.1. In addition to the MAA Emails, Revy apparently also failed to read the Declaration of Steven Dewey ("Dewey Decl."), ¶¶ 4–5, submitted with AT&T's moving papers, which squarely addresses this issue.

### C. Revy's Declaration Does Not Rebut the Presumption of Receipt and AT&T's Evidence that Revy Was On Notice of Its Offer.

Revy's declaration is insufficient to rebut the presumption of receipt to which AT&T is entitled for two reasons. First, his declaration is internally inconsistent and therefore should carry little, if any, weight. Revy initially asserts that he has "no recollection of receiving or seeing any of [the MAA Emails] at the time." *Id.* ¶ 3. Case law is clear that a failure to recall is insufficient to raise a genuine issue of material fact. *See Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 51 (2d Cir. 2022) ("Where a party merely states that she cannot *recall* signing an agreement (as opposed to *denying* she has done so), such a declaration ordinarily fails to create a triable issue of fact.")[3]; *see also Couch*, 2014 WL 7424093, at *6 (citing *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735–36 (7th Cir. 2002)) ("[A] plaintiff's testimony that she could not remember seeing the arbitration email [is] insufficient to create an issue of fact where the defendant offered evidence that the notice was sent and presumably received.").

Perhaps recognizing this, Revy then asserts that he "never opened or read any of those emails" and "never clicked the link they contained." Revy Decl. ¶ 4. Either Revy does not recall receiving the MAA Emails, or he has a specific recollection that he never opened or read the emails in question—it cannot be both. Where, as here, a party offers declarations containing such self-contradictory statements, the Court need not credit them. *See Pierre v. Hilton Rose Hall Resort & Spa*, No. 14 CIV. 3790 (VMS), 2016 WL 4742281, at *10 (E.D.N.Y. Sep. 12, 2016) (plaintiff failed to "present competent evidence" supporting negligence claim where plaintiff's self-contradictory affidavit initially disclaimed specific recollection of actual water height in pool on

---

[3] Revy's reliance on *Barrows*, 36 F.4th at 51, for the proposition that "a party's declaration can defeat a motion to compel arbitration" does not help him. The *Barrows* court "drew a deliberate line between a witness's mere failure to recall an event, which does not suffice, and a categorical denial supported by evidence, which may." Pl.'s Opp'n Br. at 6. Revy asserts in his declaration that he has "no recollection of receiving or seeing any of [the MAA Emails] at the time," and otherwise offers no evidence suggesting the MAA Emails were not delivered in his inbox as intended. Revy Decl. ¶ 3. If anything, the holding in *Barrows* supports AT&T's argument, not Revy's.

the date of accident, immediately followed by affirmative statement that water height on date of accident was consistent with attached photograph).[4]

Second, self-serving declarations like Revy's must "provide more than 'mere denial' of receipt" to rebut the presumption of receipt. *Chung*, 2025 WL 1029432, at *6. "[C]ourts generally require more specific evidence to successfully rebut the presumption," such as documentary evidence of failed or untimely delivery. *Id*. at *7 (citing *D.M Rothman & Co. v. Korea Com. Bank of New York*, 411 F.3d 90, 97 (2d Cir. 2005)). For example, in *Manigault*, the employer, like AT&T, submitted declarations showing that an arbitration agreement was mailed to its employee, the plaintiff, and was not returned as undeliverable. *Manigault*, 318 F. App'x at 7. The plaintiff, like Revy, simply claimed that she never received the arbitration agreement. *Id.* The Second Circuit found that "[t]he evidence offered by [the plaintiff], consisting of her own denial of receipt of the mailing as well as similar denials by two other employees of [the defendant], is insufficient to rebut the presumption that she received the mailing." *Id.*

In *Chung*, the employer, like AT&T, established the presumption of receipt through declarations that described the mailing system by which it mailed the arbitration agreement to the plaintiffs. *Chung*, 2025 WL 1029432, at *4. Plaintiffs sought to avoid arbitration by providing declarations stating they did not receive the agreements, which contained "a general account of their daily routine related to reviewing the mail." *Id*. at *7. This, too, was "insufficient to overcome the presumption," because such generalities would render the presumption "meaningless." *Id*. at *7.

[4] If anything, Revy's assertion that he "never opened or read" the MAA Emails appears to be an admission that he received them, *id*. ¶ 4, as one cannot confidently disclaim having read or opened an email one supposedly never received. To the contrary, his admission that he "received a high volume of mass and automated company-wide messages" from AT&T, suggests that the distribution process described in AT&T's moving papers functioned exactly as described. *Id*. ¶ 5; *see generally* Reyes Decl. ¶¶ 10–14.

To argue otherwise, Revy relies on a single decision denying a motion to compel arbitration where the employer relied on the presumption of receipt, holding that "providing notice is different from forming a contract." *Alvarez v. Coca-Cola Refreshments, USA, Inc.*, 914 F. Supp. 2d 256, 258 (E.D.N.Y. 2012). But the Eastern District of New York rejected this argument over a decade ago when enforcing the same MAA that binds Revy. *See Couch*, 2014 WL 7424093, at *6–7. In *Couch*, the plaintiff was an AT&T employee who received the same three MAA Emails as Revy pursuant to the same distribution process described in the Reyes Declaration. Reyes Decl. at *4. Like Revy, that plaintiff relied on *Alvarez* to argue that the presumption of receipt should not apply when forming an arbitration agreement. *Id*. at *5. After careful analysis of *Alvarez*, the *Couch* court rejected the argument:

> [T]he *Alvarez* court faulted the application in *Manigault* of a rebuttable presumption that the plaintiff had received the arbitration materials because, in the *Alvarez* court's opinion, such rebuttable presumption should not be used in the context of a contract formation where the sender is doing more than providing mere notice, but, rather, is "extend[ing] an offer to an unwitting recipient." […] [W]hile it is true that an offer must be received in order to be accepted for purposes of contract formation, New York law does not require proof of guaranteed receipt of an offer in order to establish the existence of a valid agreement. Instead, proof of the existence of an agreement, which agreement necessarily includes the offer, must be established by only a preponderance of the evidence. Hence, the application of New York's rebuttable presumption of receipt of a proper mailing in *Manigault* was not unsound.

*Id.* at *7 (citations omitted). The plaintiff in *Couch* offered nothing more than his denial of receipt of the MAA Emails, but the court noted, "as the Second Circuit determined in *Manigault*, mere denials of receipt are insufficient to rebut the presumption that the emails were received." *Id.* at *6. The *Couch* court therefore compelled arbitration pursuant to the terms of the MAA. *Id.* at *8.

The Court should reach the same result here. Like the plaintiffs' declarations in *Manigault*, *Chung*, and *Couch*, Revy's declaration lacks evidentiary support. After stating that he has "no recollection of receiving or seeing" the MAA Emails, he paradoxically states that he never "opened or read" them and never "clicked the link they contained," even though he admittedly "received a high volume of mass and automated company-wide messages" from AT&T. Revy Decl. ¶¶ 4–5. Revy's declaration offers nothing more than a denial devoid of factual support and therefore is insufficient to overcome the presumption.

**D. Revy's Conduct Constitutes Acceptance of AT&T's Offer.**

Case law is abundantly clear that a party can accept an offer by conduct (here, foregoing the opportunity to opt out of the MAA). *Chung*, 2025 WL 1029432, at *8 (quoting *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 582 (2d Cir. 2006)) ("Under New York law, the conduct of the parties may lead to the inference of a binding agreement."). Revy concedes in his declaration that he did not opt out of the MAA. Revy Decl. ¶ 7 ("Had I understood that doing nothing would surrender that right, I would have opted out, as I am informed thousands of other employees did."). Therefore, Revy accepted AT&T's offer and is bound.

Revy's failure to read three separate emails with the subject line "Action Required: Arbitration Agreement" is no defense. Under New York law, it is well-settled that failure to read a contract (indeed, even the *inability* to read a contract) is not a defense to contract formation. *See, e.g.*, *Metzger v. Aetna Ins. Co.*, 227 N.Y. 411, 416 (1920) ("[W]hen a party to a written contract accepts it as a contract he is bound by the stipulations and conditions expressed in it whether he reads them or not."); *Holcomb v. TWR Express, Inc.*, 11 A.D.3d 513, 514 (N.Y. App. Div. 2004) (quoting *Moon Choung v. Allstate Ins. Co.*, 283 A.D.2d 468, 468 (N.Y. App. Div. 2001)) ("A party who executes a contract is presumed to know its contents and to assent to them."); *see also*

*McCarthy v. Wachovia Bank, N.A.*, 759 F. Supp. 2d 265, 273 (E.D.N.Y. 2011) (quoting *Tuskey v. Volt Info. Scis., Inc.*, No. 00 Civ. 7410 (DAB) (GWG), 2001 WL 873204, at *3 (S.D.N.Y. Aug. 3, 2001)) (holding that parties may be bound by contracts "whether or not the party has read the contract").

Therefore, the contested elements of contract formation—offer and acceptance—are evident in the parties' factual record.

## II. CONCLUSION

AT&T and Revy are bound by a valid arbitration agreement. Revy has failed to rebut the presumption of receipt or create a genuine dispute that he was on notice of his obligation to opt out of the MAA if he did not wish to be bound. The outcome here should be in the same as in *Couch*: this Court must order Revy to submit his claims to arbitration pursuant to the MAA, and stay this proceeding pending the completion of arbitration.

Dated: June 15, 2026

Respectfully submitted,

By: ______________________________

Sara B. Tomezsko
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
Tel: (212) 318-6000
Fax: (212) 319-4090
saratomezsko@paulhastings.com

*Attorneys for Defendant*
AT&T Services Inc.